UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>v.<br><br>D-13  DAVID JURADO,<br><br>　　　Defendant.<br>_____/ | CRIMINAL NO. 11-20699<br><br>HON. NANCY G. EDMUNDS |

**UNITED STATES' RESPONSE TO DEFENDANT JURADO'S MOTION TO AMEND CONDITIONS OF RELEASE TO BOND**

NOW COMES the United States of America, by and through undersigned counsel, and responds as follows to defendant Jurado's motion to amend the conditions of his bond (Docket Entry (DE) 302): the defendant's remains a risk of flight and a danger to the community post-conviction. Therefore, the condition requiring the use of a GPS tether should remain in effect until his sentencing.

## FACTS

The defendant pleaded guilty on October 7, 2013 to Count Three of the Second Superseding Indictment for his role in a wide ranging controlled substance distribution ring in which he was personally responsible for

distributing approximately 168 kilograms of cocaine and 2,600 kilograms of marijuana. Given the defendant's lack of a prior criminal history, the parties believe that he is safety valve eligible if he satisfies all of the requirements of that statute. If he eventually qualifies for the safety valve, the defendant would not be facing the ten year mandatory minimum sentence; however, the parties agree that the relevant guidelines in that situation would still be 135-168 months.

    Prior to the defendant's plea, the government was preparing its proofs against the defendant that would have included evidence uncovered during a search of the defendant's house on February 28, 2012. The government was prepared to call Special Agent (SA) Don Grace to the witness stand to testify about the search of the defendant's house. SA Grace would have testified that the agents knocked and announced their presence at the defendant residence that morning and the defendant answered the door. The agents told the defendant that they had a federal arrest warrant for him and a search warrant for the house. At that time, SA Grace asked the defendant if there were any drugs, guns, jewelry, or large amounts of U.S. currency located in the residence. The defendant stated that he had a loaded handgun and approximately $100,000 cash in a safe upstairs. SA

Grace followed up by asking the defendant if besides what he had just disclosed whether they were any other guns, money, or drugs on the property. The defendant said no, that was everything.

The agents then went to the safe and found approximately $115,000 in cash and a loaded .45 caliber pistol with three other loaded magazines in the safe. *See* Exhibits 1 – 2. In that same room, they found jewelry and a money counter. *See* Exhibits 3 – 4. In the master bedroom, law enforcement found and numerous miscellaneous documents including tax documents and a Mexican passport and U.S. visa and application for permanent residence paperwork for the defendant's wife. The agents then began to search the rest of the location. They found $4,200 in cash secreted in a hollowed out children's book. *See* Exhibit 5 - 7. Another $1,050 in cash was found in a men's wallet in the kitchen. The search also uncovered, concealed in the basement ceiling, four large squares of U.S. currency wrapped in black electrical tape. *See* Exhibits 8 - 11. These four bundles contained approximately $650,000 in cash. The search also included the vehicles parked outside the residence. See Exhibits 12 - 13. The agents found in the defendant's 2010 Ford F-250 pickup truck a

Mexican license plate.[1]  *See* Exhibit 14.

In addition to this evidence found during the search warrant, the government was also prepared to present at trial evidence concerning an interview conducted with the defendant's sister in April 2013 where she stated that her brother gave her $30,000 to hold for him beginning in 2009. Finally, the government was prepared to present both video and audio recorded evidence pertaining to the defendant's participation in the narcotics distribution. This evidence shows the defendant conversing with the confidential source in fluent Spanish, as well as the source telling the defendant to reach out to co-defendant Bustamante directly since Bustamante wanted to talk to the defendant.

## **LAW**

Post-conviction, whether by plea or by verdict, the calculus concerning release and detention changes. Once a defendant is pending sentence, there is a presumption in favor of detention and the burden falls upon him/her to establish, by clear and convincing evidence, that he/she is not likely to flee or pose a danger to the community. 18 U.S.C. § 3143(a); *United States v. Vance,* 851 F.2d 166, 169 (6th Cir. 1988); *United States v. Dimora,* 2012 WL

---

[1] This truck was seized and forfeited administratively. The DEA was able to sell this vehicle for over $30,000.

1409396, *2 (N.D.Ohio, 2012).

## **ARGUMENT**

In the instant motion, the defendant petitions the Court to remove the condition of his bond that requires the use of a GPS tether. However, given the nature of the defendant's crimes and the defendant's particular situation, he should not be allowed to remain on bond without a GPS tether.

To begin, the Court is already providing the defendant a substantial concession by allowing him to remain on bond after his plea. As stated above, the statutory presumption post-conviction is that the defendant should be detained absent a showing by clear and convincing evidence that he is not a flight risk or danger to the community. Quite simply, the defendant cannot meet that burden.

First, the defendant is facing a substantial prison sentence. Even if the mandatory minimum does not apply, the defendant is facing a guidelines sentence of over ten years and the government will be advocating for a sentence within those guidelines. The defendant has been involved in a major narcotics distribution organization for the last several years that has been responsible for delivering well over 1,500 kilograms of cocaine and thousands of kilograms of marijuana to the Eastern District of Michigan.

Nor has the defendant played a small role in this conspiracy. Just based upon the drug ledgers provided to the DEA by the confidential source, the defendant is the second largest cocaine distributor amongst the co-conspirators charged in Count Three. The potential for a lengthy prison sentence provides the defendant a strong incentive to flee.

Second, the evidence shows the defendant has access to, and the ability and propensity to conceal, large amounts of cash. Over $700,000 was seized from his residence during the execution of the arrest and search warrants attendant to this case.[2] A large amount of that money was secreted in his basement ceiling and in a hollow book. Another $30,000 was seized from his sister who he had given the money to "hold" for him. The amount of liquid cash the defendant possessed is staggering and could make for an easy getaway. Moreover, it is completely unclear whether law enforcement has found all of the defendant's money given his proclivity at hiding it. All the Court has to rely on concerning the defendant's access to money is his word and that has already proven unreliable when he stated to the DEA agents during the search of his house that the only substantial amount of money was to be found in the safe.

---

[2] All of this money is completely unexplained given the defendant's 2010 tax documents seized the search of his house reflect income of approximately $31,000.

Ignoring his powerful incentive to leave and his ability to hide money and resources, the defendant posits that he is a life-long resident of Michigan and has strong ties to this area, thus giving him no reason to flee. However, this one fact fails to tip the balance when considering that the defendant speaks Spanish fluently, that his wife is a Mexican national, that he has traveled frequently to Mexico, that he has had direct communication with his co-conspirator, and current fugitive in Mexico, Jose Roberto Bustamante as recently as a week before his arrest on these charges, and that he was in possession of a Mexican license plate.

In conclusion, the defendant has the motive, means, and, if the GPS tether is removed, the opportunity to flee the jurisdiction. Given all of the circumstances in this case, the defendant simply cannot meet his burden to show that he is not likely to flee or a danger to the community.

---

## **CONCLUSION**

Consequently, the government requests that the Court deny the defendant's motion to amend his bond condition requiring the use of a GPS tether.

Respectfully submitted,

BARBARA L. McQUADE
UNITED STATES ATTORNEY

/s/ Christopher Graveline
Christopher Graveline (P69515)
Doug Salzenstein
Assistant United States Attorneys
211 Fort Street
Suite 2001
Detroit, MI 48226
(313) 226-9100
christopher.graveline2@usdoj.gov
doug.salzenstein@usdoj.gov

Dated: October 25, 2013

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on October 25, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

                                                                   /s/ Christopher Graveline
                                                                   Christopher Graveline (P69515)
                                                                   Doug Salzenstein
                                                                   Assistant United States Attorneys
                                                                   211 Fort Street
                                                                   Suite 2001
                                                                   Detroit, MI 48226
                                                                   (313) 226-9100
                                                                   christopher.graveline2@usdoj.gov
                                                                   doug.salzenstein@usdoj.gov